**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EBONY THOMPSON and JUVENAL RODRIGUEZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FCA US, LLC, and DOES 1 to 10,<br><br>Defendants. | Case No. 2:21-cv-09815-FMO-MBK<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE**<br><br>Judge:      Hon. Fernando M. Olguin<br>Time:       10:00 a.m.<br>Courtroom:  6D<br>Date:       April 24, 2025 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY .................................................. 1

II.    FACTS AND HISTORY OF THE LITIGATION ............................. 3

III.   MATERIAL TERMS OF THE PROPOSED SETTLEMENT ........................ 6

    A.     Conditional Certification of the Class ................................. 6

    B.     Warranty Extension ........................................................ 6

    C.     Out-of-Pocket Reimbursement Program ............................. 7

    D.     The Release of Claims/Liability ..................................... 7

    E.     The Claims Process and Administration ............................. 7

    F.     The Proposed Notice to the Settlement Class ..................... 8

    G.     Proposed Attorneys' Fees, Litigation Costs, and Service Awards ..... 12

IV.    PRELIMINARY APPROVAL SHOULD BE GRANTED ........................... 13

    A.     Provisional Certification of the Settlement Class is Appropriate ....... 13

        1.     The Settlement Class Meets Rule 23 Requirements ............... 13

            a.     The Settlement Class Is Sufficiently Numerous and Ascertainable ..... 14

            b.     There are Questions of Law and Fact that are Common to the Settlement Class ..... 15

            c.     Plaintiffs' Claims Are Typical of the Proposed Settlement Class ..... 16

            d.     Plaintiffs and Settlement Class Counsel Will Adequately Represent the Interests of the Settlement Class ..... 17

            e.     Common Issues Predominate Over Individual Issues ... 17

            f.     A Class Settlement Is Superior to Other Available Means of Resolution ..... 18

    B.     The Settlement is Fair, Adequate and Reasonable ............... 19

    C.     The Proposed Settlement Is Within the Range of Reasonableness .... 21

    D.     The Method of Allocating Relief to Class Members is Equitable ..... 23

    E.     Experienced Counsels' Views Should Be Weighed Substantially ..... 24

V.     CONCLUSION ............................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015)..........................................................................20

*Altamirano v. Shaw Indus., Inc.*,
   2015 U.S. Dist. LEXIS 97098 (N.D. Cal. July 24, 2015) ...............................23

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. 13, 19

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .........................................................................16

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. Jan. 3, 2017)............................................................14

*Eisen v. PorscheCars N. Am.*,
   2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014)................................24

*Estrella v. Freedom Fin'l Network*,
   2010 U.S. Dist. LEXIS 61236 (N.D. Cal. June 2, 2010) ................................15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).............................................................17, 18, 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................21

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)..........................................................................20

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) (en banc).................................................14, 18, 20

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014)..............................................................19

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015)..........................................................................12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)............................................................................24

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

*In re Portal Software, Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ................................ 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ................................................ 14, 17, 20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................ 21

*Lozano v. AT&T Wireless Services, Inc.*,
  504 F.3d 718 (9th Cir. 2007) ............................................................ 16

*Radcliffe v. Experian Info. Solutions Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .......................................................... 13

*Rannis v. Recchia*,
  380 F. App'x. 646 (9th Cir. 2010) .................................................... 11

*Rodriguez v. West Pub. Corp.*,
  463 F.3d 948 (9th Cir. 2009) ....................................... 1, 5, 21, 23

*Ruch v. AM Retail Group, Inc.*,
  2016 U.S. Dist. LEXIS 39629 (N.D. Cal. Mar. 24, 2016) ................................ 20

*Smith v. Cardinal Logistics Mgmt. Corp.*,
  2008 U.S. Dist. LEXIS 117047 (N.D. Cal. Sep. 5, 2008) ................................ 18

*Tyson Foods v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................. 17

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................... 15

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ......................................... 12

California Business & Professions Code section 17200, *et seq.* ............... 3, 4, 15, 24

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................13, 14, 15, 17

Fed. R. Civ. P. 23(b) ..............................................................8, 13, 17, 18

Fed. R. Civ. P. 23(c) .................................................................... 8, 11

Fed. R. Civ. P. 23(e) ...................................................................1, 8, 23

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

## I.    INTRODUCTION AND SUMMARY

Plaintiff Ebony Thompson ("Thompson") and Plaintiff Juvenal Rodriguez ("Rodriguez") (collectively referred to as "Plaintiffs") hereby move for preliminary approval of the Settlement of this class action with Defendant FCA US, LLC ("Defendant" or "FCA US" or "FCA").[1]  As set forth below, all of the requirements of Federal Rule of Civil Procedure 23(e) and this Court's Order re: Notice of Settlement and Requirements re Preliminary Approval (ECF 80) are satisfied.

This case arises out of FCA's alleged violation of the California Emissions Warranty (California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and 2038) ("Emissions Warranty" or "Warranty").  Plaintiffs assert that FCA failed to properly identify the MultiAir Actuators and Fuel Injector components ("Fuel Injector") in the Class Vehicles as warranted parts that should correctly be covered for 15 years or 150,000-miles under the Warranty and that FCA failed to pay for the diagnosis, repair, and replacement of the MultiAir Actuators and Fuel Injector in the Class Vehicles as required under the Warranty.[2]  As a result of FCA's alleged misconduct, Plaintiffs allege that they and members of the Class have paid, and are continuing to pay, out of pocket for repairs that should be covered under the Warranty for the Class Vehicles, which consist of model-year 2015-2017 Chrysler 200 vehicles originally sold as Partial Zero Emissions Vehicles ("PZEV") vehicles in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington.  FCA has represented that approximately 47,000 Class Vehicles are included in the Class.  Lurie Decl. ¶18.

---

[1] Terms capitalized in this Motion have the same meanings ascribed to them in the Settlement Agreement.

[2] Plaintiffs originally filed and litigated separate cases in this District relating to each part. The *Rodriguez* case (relating to the Fuel Injector) was transferred from Judge Slaughter to this Court for the sole purpose of joint settlement of both actions.  ECF 77-78.

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

After protracted and contested litigation, three (3) full-day mediations, and over eighteen (18) months of negotiations assisted by experienced mediator Bradley Winters, the Parties reached a settlement on November 14, 2024, which covers both Plaintiffs' actions.  The key Settlement terms are as follows:

In exchange for a Release (limited to claims regarding the MultiAir Actuator and Fuel Injector), FCA will extend its existing warranty obligations applicable to the Class Vehicles to cover the costs of all parts and labor to replace a failed MultiAir Actuator or Fuel Injector for the earlier of 15 (fifteen) years from the Class Vehicle's in-service date or 150,000 miles driven.  All terms and conditions of the Basic Limited Warranty will continue to apply.  The Warranty Extension follows the Class Vehicles, is not personal to any owner or lessee, and fully survives the sale of the vehicle to subsequent purchasers.  Class Members are not required to present any Settlement-related document to receive warranty service at an authorized FCA dealership.  FCA will not impose any fees or charges related to the warranty service.  Further, all applicable rights and conditions under preexisting warranties will remain notwithstanding the implementation of this Settlement.  Nothing in the Settlement will be construed as diminishing or otherwise affecting any other express or implied warranties covering the Class Vehicles.  Settlement Agreement ("S.A.") §§ 3.1-3.3.

In addition, any Class Member who paid for a repair relating to a failed MultiAir Actuator or Fuel Injector entitled to warranty coverage under the Settlement may submit a claim for full reimbursement upon proof of a qualifying repair.  S.A. §§ 3.5 -3.6. As described below, the release provision (S.A. §§ 7.1-7.2) and opt out procedure (S.A. §9.1- 9.9) also satisfy this Court's specific requirements.

The Settlement is fair, adequate and reasonable.  The Settlement effectively provides Class Members the same remedies that they would otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial.

Plaintiffs accordingly request that the Court review the negotiated Settlement Agreement, attached as Exhibit 1 to the accompanying Declaration of Jordan L. Lurie ("Lurie Decl."), and enter an order: (1) granting preliminary approval of the Settlement; (2) confirming certification of the Class for settlement purposes; (3) confirming Plaintiffs as Class Representatives; (4) confirming Plaintiffs' Counsel, Pomerantz LLP and The Law Office of Robert L. Starr, as Class Counsel; (5) approving the Parties' proposed form and method of giving Class Members notice of the action and proposed Settlement; (6) directing that notice be given to Class Members in the proposed form and manner; and, (7) setting a hearing on Final Approval of the Settlement, entering judgment, awarding attorneys' fees and expenses to Plaintiffs' Counsel, and granting service awards to Plaintiffs.

## II.    FACTS AND HISTORY OF THE LITIGATION

Plaintiff Thompson was the purchaser and owner of a used, 2015 Chrysler 200, VIN 1C3CCCAB9FN571783. Her vehicle is and was a PZEV vehicle. On October 23, 2020, she took her vehicle to Scott Robinson Chrysler Dodge Jeep Ram ("Scott Robinson"), located at 20900 Hawthorne Boulevard, Torrance, California 90503 for repairs. At the time that her vehicle was presented for repairs, it had been driven 97,200 miles. Scott Robinson is a FCA factory authorized repair facility. She complained that the vehicle would crank and not start, that the vehicle would shut off while driving and that the vehicle was running rough. Scott Robinson diagnosed the vehicle as having a defective MultiAir Actuator. Declaration of Ebony Thompson ("Thompson Decl."), ¶2.  FCA refused to cover the repair under the Emissions Warranty, even though the vehicle was in service less than 15-years and had been driven less than 150,000-miles. Plaintiff Thompson had to pay out of her own pocket for the repairs, at a cost of $2,071.52. *Id*., ¶3.

Plaintiff Thompson initiated her action on December 20, 2021, and filed her First Amended Complaint ("FAC") on March 17, 2022, alleging causes of action against FCA for violating California's Unfair Competition Law ("UCL"). ECF Nos.

1 and 23; Lurie Decl. ¶3. On April 14, 2022, FCA moved to dismiss the FAC, which the Court granted in part, with leave to amend Plaintiff's claims seeking equitable remedies. ECF No. 45; Lurie Decl. ¶4. Plaintiff Thompson filed the operative SAC on April 3, 2023, asserting the same claims but adding additional allegations relating to equitable relief. *See generally* ECF No. 46; Lurie Decl., ¶4. FCA filed another motion to dismiss on April 17, 2023, and a renewed motion to dismiss on May 13, 2024. ECF Nos. 49 and 70; Lurie Decl. ¶5. Briefing on FCA's motion to dismiss has been in abeyance since April 24, 2023, pending mediation with Bradley Winters at JAMS, which began on May 8, 2023, and pending ongoing settlement discussions that have continued between the Parties through November 14, 2024, when this case was settled in principle. ECF Nos. 52 and 76; Lurie Decl., ¶6.

Plaintiff Rodriguez was the purchaser and owner of a used, used 2015 Chrysler 200, VIN 1C3CCCAB9FN578295. His vehicle is and was a PZEV vehicle. On June 16, 2022, at 130,364 miles, he presented his vehicle for repairs to McPeek's Chrysler Dodge Jeep RAM of Anaheim ("McPeek's"), located at 1221 S Auto Center Dr, Anaheim, CA 92806. McPeek's is an FCA certified repair facility. He brought the vehicle in for repair because the Check Engine light came on and because the vehicle would not pass a California emissions test. McPeek's diagnosed the vehicle as having a leaking and defective Fuel Injector.  Declaration of Juvenal Rodriguez ("Rodriguez Decl."), ¶2. FCA refused to cover the repair under the Emissions Warranty, even though the vehicle was in service less than 15-years and had been driven less than 150,000-miles. As a result, he had to pay out of his own pocket for the repairs, at a cost of $1,004.17. *Id*., ¶3.

Plaintiff Rodriguez initiated his action on April 4, 2022, and filed his First Amended Complaint ("FAC") on November 23, 2022, alleging causes of action against FCA for violating California's Unfair Competition Law ("UCL"). ECF Nos. 1 and 21; Lurie Decl. ¶7. On December 22, 2022, FCA moved to dismiss the FAC, which the Court granted in part, with leave to amend Plaintiff's claims seeking

1    equitable remedies. ECF No. 39; Lurie Decl. ¶8. Plaintiff Rodriguez filed the

2    operative SAC on April 11, 2023, asserting the same claims but adding additional

3    allegations relating to equitable relief. *See generally* ECF No. 40; Lurie Decl., ¶8.

4    FCA filed another motion to dismiss on May 9, 2023 (ECF No. 45; Lurie Decl. ¶9),

5    which Plaintiff opposed on July 14. 2023 (ECF No. 49). The hearing on FCA's

6    motion to dismiss has been held in abeyance since August 2, 2023, pending ongoing

7    settlement discussions between the Parties through November 14, 2024, when the

8    Rodriguez matter was settled in principle. ECF No. 52; Lurie Decl., ¶10.

9       The Parties engaged in protracted and contested litigation in both the

10   *Thompson* and the *Rodriguez actions* since the cases' inceptions. The Parties also

11   engaged in discovery in both cases, including the production and review of

12   documents produced by FCA, and numerous written discovery requests. Lurie Decl.,

13   ¶11. The Parties participated in three full-day, in-person mediation sessions where

14   both the *Thompson* and *Rodriguez* matters were discussed and negotiated on May 8,

15   2023, September 14, 2023, and June 25, 2024. Lurie Decl., ¶12. Since the initial

16   mediation on May 8, 2023, the Parties had numerous communications with the

17   mediator regarding the negotiations, terms, timing, and related issues. *Id*. After

18   months of settlement discussions, on November 14, 2024, the Parties reached

19   agreement as to principal terms for both cases, and the two cases resolved together,

20   covering the same Class Vehicles and the same Settlement terms. The Parties then

21   separately negotiated fees, costs, and service awards with the active participation

22   and guidance of the mediator. The Parties also agreed on one joint settlement

23   agreement with one anticipated settlement Class notice for both cases. The

24   Settlement is set forth in complete and final form in the Settlement Agreement.

25   Lurie Decl. ¶13, Ex. 1.

26   ///

27   ///

28   ///

## III.   MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### A.   Conditional Certification of the Class

The Settlement contemplates conditional certification of a Class consisting of "All individuals who, as confirmed by FCA US's records, purchased a model-year 2015-2017 Chrysler 200 vehicle that was originally sold as a PZEV vehicle in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington ("Reg. 177 States")." [3] Settlement Agreement ("S.A.") §2.7.  The model and model years of the Class Vehicles, and the Reg. 177 States covered by the Settlement are identical to the allegations in the operative complaints.  Further, as set forth below, Plaintiffs and the Class are receiving exactly the same relief as they sought in their respective actions and that they would have received had they fully prevailed on their claims, namely, a determination that the parts are covered by the Warranty, Warranty extensions, and reimbursement for out-of-pocket costs.

### B.   Warranty Extension

FCA has agreed to extend its existing warranty obligations applicable to the Settlement Class Vehicles to cover the costs of all parts and labor to replace a failed MultiAir Actuator or Fuel Injector for the earlier of fifteen years from the Class Vehicle's in-service date or 150,000 miles driven.  All terms and conditions of the Basic Limited Warranty will apply.  The Warranty Extension follows the Settlement Class Vehicles, is not personal to any owner or lessee, and fully survives the sale of the vehicle to subsequent purchasers.  S.A. §3.1.

---

[3] Excluded from the Class are: "Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.  Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." S.A. §2.7.

The Settlement Class Members will not be required to present any Settlement-related document to receive warranty service at an authorized FCA dealership. FCA will not impose any fees or charges related to the warranty service. S.A. §3.2. All applicable rights and conditions under preexisting warranties will remain notwithstanding the implementation of this Settlement. Nothing in this Settlement will be construed as diminishing or otherwise affecting any other express or implied warranties covering the Class Vehicles. S.A. §3.3.

### C.     Out-of-Pocket Reimbursement Program

Under the Settlement, any Settlement Class Member who paid for a repair relating to a failed MultiAir Actuator or Fuel Injector component may submit a claim for full reimbursement upon proof of a qualifying repair. Claims will be paid according to FCA's normal extended warranty payment processes. S.A. §3.5.

### D.     The Release of Claims/Liability

In consideration of the Settlement benefits, FCA and its related entities and affiliates (the "Released Parties," as defined in S.A. §2.20) will receive a release of claims and potential claims related to the MultiAir Actuator or Fuel Injector in Class Vehicles that are the subject of this litigation and Settlement, including the claims that were or could have been asserted in the litigation (the "Released Claims," as defined in S.A. §2.19). The scope of the Release is not overbroad and properly reflects the specific issues, allegations, and claims in this case, and specifically excludes claims for death, personal injuries, damage to tangible property other than a Class Vehicle, subrogation, and any pending automobile lemon law claim. *Id.*

### E.     The Claims Process and Administration

The Settlement provides for a fair, equitable, and straightforward claims process for Settlement Class Members. Claims for reimbursement under the Settlement will be submitted through FCA's reimbursement system. The details for submission will be posted prominently in each of the following locations: the Short-Form Notice, Long-Form Notice, and a dedicated Settlement Website. S.A. §4.1.

FCA will be responsible for all Administration Expenses including Notice.  In no event will Class Counsel be responsible for any Administration Expenses. S.A. §3.7.

The Settlement Administrator will be responsible for, without limitation, printing, mailing and arranging for the mailing of Notice; handling return mail not delivered to Class Members, making any additional mailings required under the terms of this agreement, responding to requests for direct mailed notice or other documents, receiving and maintaining on behalf of the Court any Class member correspondence regarding request for exclusion and/or objections to the Settlement, forwarding written inquiries to Class Counsel or their designee for a response if warranted, establishing a post office box for the receipt of any correspondence, responding to requests from Class Counsel or FCA's counsel, establishing a website and toll free voice response unit with message capabilities for Class Members to refer for information about the Action and the Settlement, otherwise implementing and/or assisting with the dissemination of the notice of the Settlement.  S.A. §4.2.

### F.     The Proposed Notice to the Settlement Class

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Following the Court granting preliminary approval of the Settlement, the Settlement Administrator will send the Short-Form Notice (Ex. A to the Settlement Agreement attached to the Lurie Decl.) by direct U.S. mail to all reasonably identifiable Class Members.  The Administrator will further set up and maintain a Settlement Website where Class Members can access a copy of the Settlement Agreement, the Long-Form Notice (Ex. B to the Settlement Agreement attached to the Lurie Decl.), the operative complaint, and additional information about the

Action and Settlement.   The Short-Form Notice will include the address of the
Settlement Website, as well as a toll-free number for an interactive voice recording
service that allows Class Members to leave a request for a paper copy of the Long-
Form Notice. S.A. §5.3.

For purposes of mailing Notice, FCA has agreed to provide to the
Administrator within sixty days of entry of the Preliminary Approval Order all
available names and mailing address information for owners and lessors of each
Class Vehicle, along with the Vehicle Identification Number ("VIN") for those
Class Vehicles.   Prior to mailing the individual Short-Form Notice, the
Administrator will conduct an address search through the United States Postal
Service's National Change of Address database to update the address information
for Class Members. S.A. §5.4.

For all Class Members for whom the Notice is returned with forwarding
address information, the Settlement will re-mail the Notice to the new address
indicated. For all Class Members for whom the Notice is returned without
forwarding address information, the Settlement will perform an advanced address
search and re-mail the Notice to the best-known address resulting from that search.
If the Notice is returned as undeliverable a second time, then no further mailing will
be required.   The Settlement will promptly log each Notice that is returned as
undeliverable and provide copies of the log to Class Counsel.   S.A. §5.6.

For a period ending ninety days after the Notice Date, the Settlement will
provide Class Counsel and FCA US with reasonable periodic reports of the total
number of Notices sent to Class Members by U.S. mail, along with the numbers of
Notices returned as undeliverable. The Settlement will communicate with Class
Counsel and FCA US regarding delivery of Notice and the number of Class
Members who have responded to the Notice. S.A. §5.7. At least one week before
the hearing on final approval, FCA will provide an accounting of the reimbursement
claims made and paid. S.A. §3.6.

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

Finally, as discussed below, the Notice Program, its accompanying Claim Form, and the settlement website all provide the necessary details, including how and by when a reimbursement claim must be submitted, what information and documentary proof is required for a valid claim, and how to contact the Settlement Notice Administrator, or Class Counsel, with any questions or requests for assistance with respect to a claim. Indeed, the Class Notice and settlement website provide the mailing address, the email address and a toll-free telephone number for Class Members to contact the Settlement Notice Administrator

Any Settlement Class Member may make a request for exclusion by submitting an opt out or exclusion form which the Settlement shall make available on the Settlement Website per this Court's Order (ECF 80) or by submitting such request in writing.  The completed opt out form or written request shall be sent via first class U.S. mail to the specific address as set forth in the Long-Form Notice. S.A. §9.2. Any request for exclusion must be submitted no later than forty-five days after the Notice Date.  S.A. §9.3.

Any Class Member who wishes to enter an objection to be considered is to submit a written notice of objection directly to the Court at the address set forth in the Notice postmarked by no later than forty-five days after the Notice Date. Any Class Member who does not file a timely, valid written request for exclusion under the terms of the Settlement Agreement shall be bound by all subsequent proceedings, orders, and judgments as specified in the Settlement Agreement. S.A. §§9.2-9.6; §10.1.

To state a valid objection to the Settlement, an objecting Class Member must provide the following specific information in his, her, or its written objection: (i) the case name and number, *i.e.*, *Thompson v. FCA US LLC*, Case No. 2:21-cv-09815 (C.D. Cal.); (ii) the Settlement Class Member's full name, current address, and current telephone number; (iii) the model year and VIN of his /her Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the

position and whether the objection applies only to the objector, a part of the Class, or the entire class; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of the attorney(s), if any, who is representing the objecting Class Member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the Class Member objecting intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the Class Member objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; (ix) the signature of the Class Member objecting, in addition to the signature of any attorney representing the Class Member objecting in connection with the objection; (x) the date of the objection; (xi) a list of all cases in which the Class Member and/or his or her counsel filed or in any way participated – financially or otherwise – in objecting to a class settlement during the preceding five years. If the Class Member or their counsel has not made any such prior objection, the Class Member will affirmatively so state in the written materials provided with the objection. S.A. §10.2; Ex. B to the Settlement Agreement.

Plaintiffs request that the Court approve this method of notice as the best practicable under the circumstances. *See, e.g.*, *Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding mailed notice to be the best notice practicable where reasonable efforts were taken to ascertain class members addresses). The notices comply with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" the nature of the action; the Class definition; the Class claims, issues, or defenses; that the Class Member may appear through counsel; that the court will exclude from the Class any Member who requests exclusion; the time and manner for requesting exclusion and objecting to the Settlement; and the binding effect of a class judgment on Class Members. (*See* Settlement Agreement, Exs. A and B.) S.A. §10.2.

In compliance with the attorney general notification provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, FCA will also cause notice of the Settlement to be provided to the Attorney General of the United States and the attorneys general of each state or territory in which a Class Member resides ("CAFA Notice"). FCA will bear all costs of effecting the CAFA Notice. S.A. §5.1.

### G.    Proposed Attorneys' Fees, Litigation Costs, and Service Awards

After the Parties reached agreement on the principal terms of the Settlement, the mediator assisted the Parties in negotiating sums for attorneys' fees, expenses, and service awards separately. Lurie Decl., ¶13. These amounts to be finally awarded by the Court are in addition to the benefits provided directly to the Settlement Class and will not reduce or otherwise have any effect on the benefits made available to the Settlement Class. S.A. §6.2. Subject to Court approval, FCA has agreed to not oppose Class Counsel's application for attorneys' fees of up to $980,000 inclusive of litigation costs. S.A. §6.1. More information regarding the attorneys' fees will be provided in Plaintiffs' motion for attorneys' fees.

Also, subject to Court approval, the Settlement Agreement provides for a service award to each of the named Class Representatives for their efforts to secure relief on behalf of the Settlement Class, in the amount of $7,500 for each Plaintiff, to be paid separately from the benefits to the Settlement Class. S.A. §6.3. FCA will pay Class Counsel the Service Awards and any Attorneys' Fees, Costs, and Expenses awarded by the Court within twenty days of the Effective Date. S.A. §6.4.

Plaintiffs are entitled to a service award for their time and effort to support a case in which they had a modest personal interest, but which provided considerable benefits to Class Members—a commitment undertaken without any guarantee of recompense. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). In support of their request, Plaintiffs state that they: 1) initiated and filed their cases; 2) regularly stayed in touch with their attorneys; 3) searched for and sent documents and provided information to their attorneys prior to filing the

complaint; 4) reviewed pleadings filed in their cases; 5) worked with their attorneys to provide full and complete responses to multiple sets of discovery; 6) were available during several mediations sessions and consented to the settlement; 7) reviewed the settlement agreement; and, 8) helped each Class member to receive substantial payments because of the case.  Further, the standard set forth in *Radcliffe v. Experian Info. Solutions Inc*., 715 F.3d 1157 (9th Cir. 2013) is satisfied because each Plaintiffs' incentive payment expressly is not conditioned or contingent on their approving the settlement.  *See* Declaration of Ebony Thompson ("Thompson Decl.")  attached as Ex. 4 to the Lurie Decl.), ¶8; Declaration of Juvenal Rodriguez ("Rodriguez Decl.") attached as Ex. 5 to the Lurie Decl.), ¶8.

## IV.    PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.    Provisional Certification of the Settlement Class is Appropriate

The Parties request that the Court provisionally certify the proposed Settlement Class. Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class (as defined in the Parties' Settlement) has not previously been certified by the Court, and the requirements for certification are met, as set forth below. Provisional class certification facilitates distribution of notice on the terms of the proposed settlement and the date and time of the final approval hearing to all Class Members. *See Manual for Complex Litigation* (Third) ("Manual") § 30.41.

### 1.    The Settlement Class Meets Rule 23 Requirements

Before granting preliminary approval of the Settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual § 21.632. An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

The Court must apply the criteria for class certification "differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). For example, in deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id*. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses. See *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) ("In the settlement context, a court "must pay 'undiluted, even heightened attention' to the class certification requirements.") (citation omitted). That said, the Ninth Circuit en banc court in *Hyundai* recognized that the element of predominance is "readily met" in cases, such as here, alleging consumer fraud. *Hyundai*, 926 F.3d at 559.

### a. The Settlement Class Is Sufficiently Numerous and Ascertainable

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members). Here, the settlement Class consists of current and former owners of approximately 47,000 vehicles, satisfying this requirement. Lurie Decl., ¶18.

The Ninth Circuit recently clarified that there is no threshold "ascertainability" requirement in this Circuit. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. Jan. 3, 2017). Nonetheless, the Settlement Class is ascertainable as members can be readily identified through the purchase and warranty records of FCA and through each state's department of motor vehicle records.

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

**b.    There are Questions of Law and Fact that are Common to the Settlement Class**

The second Rule 23(a) requirement, commonality, is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal. June 2, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-20 (9th Cir. 1998)). A single common question of law or fact satisfies this requirement. *See Dukes*, 564 U.S. at 369.

Here, Plaintiffs have alleged FCA purportedly failed to properly identify and pay for the diagnosis, repair, and replacement of MultiAir Actuators and Fuel Injector components that should correctly be covered for 15-years or 150,000-miles, pursuant to the Emissions Warranty. Plaintiffs have further alleged that, a result of FCA not providing proper coverage, Plaintiffs and members of the Settlement Class have paid and are continuing to pay out of pocket for repairs that should be covered under the Emissions Warranty.  FCA contends that MultiAir Actuators and Fuel Injectors are properly not covered in Class Vehicles under the Emissions Warranty.

The commonality requirement is easily satisfied given that the issues in dispute are whether FCA has failed and is failing to acknowledge that the MultiAir Actuators and Fuel Injector components should be covered under the extended 15-year, 150,000-mile Emissions Warranty, whether FCA has engaged in and is engaging in a systematic business practice of failing to identify that the MultiAir Actuators and Fuel Injector components should be covered under the extended 15-year, 150,000-mile Emissions Warranty, whether FCA's conduct is an unlawful and unfair business practices in violation of California Business & Professions Code

section 17200*, et seq.*, and whether Plaintiffs and Settlement Class members are entitled to declaratory and injunctive relief regarding FCA's alleged failure to identify that the MultiAir Actuators and Fuel Injector components should be covered under the extended 15-year, 150,000-mile Emissions Warranty, are all issues that reflect common questions of fact and law.

### c.    Plaintiffs' Claims Are Typical of the Proposed Settlement Class

"In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).

Here, Plaintiffs assert that Class Members' claims arising from FCA's purported failure to identify and cover the expense of repairing or replacing MultiAir Actuators and Fuel Injector components under the extended 15-year, 150,000-mile Emissions Warranty are reasonably coextensive with the legal claims asserted by the named Plaintiffs. *See*, e.g., Third Amended Complaint, ECF No. 79, ¶¶ 2, 4, 8, 44, 48, 115. Each Class Member's claims arise from the same alleged course of conduct—that FCA failed to identify and cover MultiAir Actuators and Fuel Injectors under the extended 15-year, 150,000-mile Emissions Warranty, and as a result, Plaintiffs and members of the Class paid and are continuing to pay out of pocket for repairs that should be covered under the Emissions Warranty. Plaintiffs' claims are thus typical of the Class, as "they are reasonably coextensive with those of absent class members." Plaintiffs and Class Members would also similarly benefit from the relief provided by the Settlement. Accordingly, typicality is satisfied.

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

**d.    Plaintiffs and Settlement Class Counsel Will
Adequately Represent the Interests of the Settlement
Class**

Adequacy is satisfied because "the representative parties will fairly and
adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4); specifically:
(a) the proposed representative Plaintiffs do not have conflicts of interest with the
proposed Settlement Class (*see* Thompson Decl., ¶7; Rodriguez Decl., ¶7); and, (b)
Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at
1020. Here, Plaintiffs are adequate class representatives, as they have no conflict of
interest with the proposed Settlement Class. In fact, Plaintiffs share a common
interest in holding FCA accountable for failing to identify and cover MultiAir
Actuators and Fuel Injector components under the extended 15-year, 150,000-mile
Emissions Warranty. Moreover, there is no "'irreparable conflict of interest,' either
in the structure of the class or the terms of the settlement." *Volkswagen "Clean
Diesel,"* 895 F.3d at 608. Further, Plaintiffs and the Settlement Class are
represented by competent counsel well-versed in prosecuting automotive litigation
and class action matters. *See, e.g.*, Lurie Decl., ¶¶26-39, Exs. 2-3.

**e.    Common Issues Predominate Over Individual Issues**

"In addition to meeting the conditions imposed by Rule 23(a), the parties
seeking class certification must also show that the action is maintainable under Fed.
R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. The predominance
inquiry under Rule 23(b)(3) asks "whether the common, aggregation-enabling
issues are more prevalent or more important than the non-common, aggregation-
defeating, individual issues." *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045
(2016) (citation omitted).

"When one or more of the central issues in the action are common to the class
and can be said to predominate, the action may be proper under Rule 23(b)(3) even
though other important matters will have to be tried separately, such as damages or
some affirmative defenses peculiar to some individual class members." *Id*. So long

as there is a "clear justification for handling the dispute on a representative rather than an individual basis" (*Hanlon*, 150 F.3d at 1022), the inquiry is satisfied. If "just one common question predominates," the action may be considered proper under Rule 23(b)(3), and regardless whether "other important matters [would] have to be tried separately." *See Hyundai*, 926 F.3d at 557.

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes the relief of reimbursement for Settlement Class Member costs paid to repair or replace MultiAir Actuators and Fuel Injector components available for all Settlement Class Members based on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues.

### f.    A Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Settlement Class demonstrate the advantages of a collective bargaining and resolution process.

The damages sought by each Settlement Class Member here, while representing an important purchase for Settlement Class Members, are not so large as to weigh against the certification of a class action. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 117047, at **32-33 (N.D. Cal. Sep. 5, 2008) (finding that class members had a small interest in personally controlling the litigation even where the average amount of damages were $25,000-$30,000 per

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

year). The sheer number of separate trials that would otherwise be required also weighs in favor of settlement.

There should therefore be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, in the settlement context, there can be no objection that class proceedings would present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## B.    The Settlement is Fair, Adequate and Reasonable

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally*, 3 Conte & Newberg, Newberg on Class Actions, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."). The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ruch v. AM Retail Group, Inc*., 2016 U.S.

Dist. LEXIS 39629, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

The Court must, however, assure itself that the settlement was not the product of "collusion" by checking for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). The Ninth Circuit has identified three such signs: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement, such as here, where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant (the "Bluetooth Factors"). *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). However, "for all these factors, 'subtle signs,' and red flags… the underlying question remains this: Is the settlement fair?" *Volkswagen "Clean Diesel,"* 895 F.3d at 611 (emphasis added).

For the reasons discussed in detail below, this Settlement is fair.  With the exception of the "clear sailing" provision (*see infra*), none of the *Bluetooth* Factors are present here. Plaintiffs' Counsel do not seek a disproportionate share of fees – in fact, Plaintiffs' Counsel's fees are paid separately from and do not at all dilute the class relief – and there is no "reverter" of unclaimed funds to FCA US as the Settlement does not provide for the establishment of a common fund or a reversion.

Further, with respect to FCA US's non-opposition to the fee, the fee and expense amount was negotiated at arm's-length by the mediator. Here, the agreed-upon attorneys' fees and expenses are the product of non-collusive, adversarial negotiations following three full-day mediations and months of further negotiations with the assistance of an experienced mediator. Lurie Decl., ¶¶13-14. The en banc court in *Hyundai* recently found that separate settlement and fee negotiations, as occurred here, provide an indication of non-collusiveness. *Hyundai*, 926 F.3d at 568.Further, by agreeing to resolve attorneys' fees amicably, FCA's counsel

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

averted the possibility that Class Counsel might apply for, and receive, a much larger award, and thus avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Accordingly, this Court's review of the reasonableness of the fee request should take into consideration the important fact that the attorneys' fees, negotiated well after the Class relief had been finalized, are discrete from the funds that have been designated as relief for the Class. Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

### C.    The Proposed Settlement Is Within the Range of Reasonableness

The proposed Settlement is well within the range of reasonableness, particularly when compared to the likely outcome of prosecuting the action. In its evaluation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). Thus, there is "no single formula" to be applied, but the Court may presume that the Parties' counsel and any mediator arrived at a reasonable range of settlement by considering the Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp*., 463 F.3d 948, 965 (9th Cir. 2009). And, this Circuit expressly rejected any requirement that the settling parties value maximum damages that can be obtained at trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc*., 696 F.3d 811, 818 (9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would often be impossible... [since] the amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question of fact that must be proved at trial.").

This Settlement provides valuable relief to Settlement Class Members who can submit claims for reimbursement for past expenses to repair or replace MultiAir Actuators and Fuel Injectors. This is a valuable benefit that directly targets the root of this class action—FCA's alleged purported failure to identify and pay for

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**

MultiAir Actuators and Fuel Injector components in Class Vehicles for 15-years or 150,000-miles under the Emissions Warranty. Lurie Decl. ¶19. The Settlement also provides valuable relief to current and future owners of Class Vehicles because FCA has agreed to extend its existing warranty obligations applicable to the Class Vehicles to cover the costs of all parts and labor to replace a failed MultiAir Actuator or Fuel Injector for the earlier of fifteen years from the Class Vehicle's in-service date or 150,000 miles driven. *Id*. at ¶20. Thus, the Settlement achieves an outcome that is identical to the best possible outcome that could be achieved at trial—Class Members who have paid to repair or replace MultiAir Actuators and Fuel Injector components will be reimbursed, and the Settlement also provides for complete future extended Emissions Warranty coverage of MultiAir Actuators and Fuel Injector components. *Id*. at ¶21. Thus, when weighed against the risk of further litigation, the Settlement clearly falls within the range of reasonableness.

Moreover, had litigation continued, the Class would run the risk of FCA's substantive defenses (including that the MultiAir Actuator and Fuel Injector components are not emissions-related parts) and the risk that the Class would not be  certified Moreover, Plaintiffs could face the termination of this action at trial. Prolonging litigation further, even if Plaintiffs were to prevail at trial,[4] would almost certainly diminish the value of the relief to Class Members, as their Subject Vehicles' mileage will continue to increase, potentially excluding them from coverage when their vehicles surpass the 15-year, 150,000-mile Emissions Warranty mileage and age threshold. The significant relief secured for the Class balanced against the risk of continuing litigation, including the risk of new adverse statutory or case law, increased costs, and expiration of a substantial amount of time,

---

[4] The inherent risks of proceeding to trial weigh in favor of settlement. S*ee In re Portal Software, Inc. Sec. Litig*., 2007 U.S. Dist. LEXIS 88886, *7-8 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to […] trial and appeal also support the settlement").

weigh heavily in favor of settlement (*Rodriguez*, 463 F.3d at 966) and support preliminary settlement approval.

**D.     The Method of Allocating Relief to Class Members is Equitable**

The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

Here, the Settlement treats all Settlement Class Members the same. All individuals who purchased a model-year 2015-2017 Chrysler 200 vehicle that was originally sold as a PZEV vehicle in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington are equally entitled to the same substantial benefits provided by the Settlement. To the extent they receive different compensation under the Settlement, it will be proportionate to their actual harms and when they occurred. For example, only those Settlement Class Members who spent money to repair or replace MultiAir Actuators and Fuel Injector components in Class Vehicles will be eligible for reimbursement of such expenses. *See, e.g., Altamirano v. Shaw Indus., Inc.*, 2015 U.S. Dist. LEXIS 97098, at *8 (N.D. Cal. July 24, 2015) (no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). Once reimbursed for repair expenses, those Class Members will stand in an equitable posture to all other Class Members—at that point, no Settlement Class Members will have suffered unreimbursed, out-of-pocket repair costs. All Class Members who incur covered expenses after the Initial Notice Date are entitled to file a Claim for reimbursement pursuant to the Settlement Agreement, all equally subject to the same terms for reimbursement of future expenses.

The same is true for the Class's release: all Class Members will provide an identical release—it does not vary by Member or subset of the Class. S.A. §VII. As a result, the settlement treats all Class Members equitably, further supporting approval of the Settlement. Finally, though the Class Representatives will receive an additional $7,500, the extra payment is in recognition for the service they performed on behalf of the Class, and the Ninth Circuit has approved such awards.

### E.    Experienced Counsels' Views Should Be Weighed Substantially

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough review of relevant documents and information, as well as a rigorous analysis of the Parties' claims and defenses. The expectations of all Parties are embodied by the Settlement, which is non-collusive, being the product of arms' length negotiations, and finalized with the assistance of a seasoned mediator. The Parties were represented by experienced class action counsel possessing significant experience in consumer claims under the UCL, and class action matters. *See, e.g.*, Lurie Decl. ¶¶26-39, Ex. 2. Likewise, FCA's counsel, Klein Thomas Lee & Fresard, are highly experienced in the field of automotive consumer class action defense and endorse the Settlement. The Parties' recommendation to approve this Settlement should therefore "be given great weight." *Eisen v. PorscheCars N. Am.*, 2014 U.S. Dist. LEXIS 14301, at *5 (C.D. Cal. Jan. 30, 2014) (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

### V.    CONCLUSION

The Parties have negotiated a fair and reasonable Settlement. Accordingly, Plaintiffs respectfully move the Court to preliminarily approve the Settlement

24

Agreement; conditionally approve the Class; direct the dissemination of notice to the Class as proposed; appoint Plaintiffs Ebony Thompson and Juvenal Rodriguez as the Class Representatives, and Pomerantz LLP, and The Law Office of Robert L. Starr, as Class Counsel; and set a hearing date and briefing schedule for final Settlement approval and Plaintiffs' fee and expense application.

Dated: March 19, 2025                    Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT STARR**

By:_____/s/ Ari Y. Basser_____
         Jordan L. Lurie
         Ari Y. Basser
         Robert L. Starr

*Attorneys for Plaintiffs*

**PLAINTIFFS' MEMORANDUM ISO PRELIMINARY APPROVAL**