

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EBONY THOMPSON AND JUVENAL RODRIGUEZ, on behalf of themselves and others similarly situated, | Case No. CV 21-9815 FMO (MBKx) |
| Plaintiffs, | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| FCA US, LLC, | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to Ebony Thompson ("Thompson") and Juvenal Rodriguez's ("Rodriguez") (collectively, "plaintiffs") Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. 94, "Motion"), and the oral argument presented at the hearings on April 24, 2025, and October 9, 2025, the court concludes as follows.

## BACKGROUND

Ebony Thompson ("Thompson") filed this putative class action against FCA US, LLC ("FCA" or "defendant") on December 20, 2021, (see Dkt. 1, Complaint), and after the court granted defendant's motion to dismiss her First Amended Complaint with leave to amend, filed a Second Amended Complaint ("SAC") on April 4, 2023, asserting a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (See Dkt. 46, SAC at ¶¶ 130-151). The SAC alleged that defendant failed to properly identify and pay for issues with MultiAir Actuators that should be covered for 15 years or 150,000 miles pursuant to the California Emissions Warranty, California Code of Regs. ("CCR") Title 13, §§ 1962.1, 2035, 2037, 2038,

which applies to Partial Zero Emissions Vehicles and Super Ultra Low Emissions Vehicle, for which FCA received a partial Emissions Credit from the California Air Resources Board ("CARB"). (See id. at ¶ 1).  As a result of FCA not providing proper coverage, Thompson and the class members paid out of pocket for repairs that should be covered under the California Emissions Warranty.  (See id. at ¶ 10).

Defendant filed a motion to dismiss the SAC on April 17, 2023.  (See Dkt. 49).  The parties deferred further briefing on the motion to participate in settlement discussions.  (See Dkts. 51-56, & 58-64).  On January 10, 2024, the motion to dismiss was vacated subject to refiling or reinstatement at the conclusion of the parties' settlement discussions. (See Dkt. 65, Court's Order of January 10, 2024, at 2).  On May 13, 2024, defendant filed a renewed motion to dismiss the SAC, (see Dkt. 70), and on May 22, 2024, the court granted the parties' stipulation to defer briefing on the renewed motion, so that the parties could resume settlement discussions.  (See Dkt. 72, Court's Order of May 22, 2024).  On August 27, 2024, based on the parties' stipulation, (Dkt. 73), the court stayed all deadlines to allow the parties to finalize the settlement.  (See Dkt. 74, Court's Order of August 27, 2024).

On November 14, 2024, the parties filed a notice of settlement of this action, and a related action, Juvenal Rodriguez v. FCA US, LLC, SA CV 22-1445 FWS (JDEx) ("Rodriguez Action"). (See Dkt. 76, Notice of Settlement).  As part of the settlement, the parties sought to have the Rodriguez Action transferred to the undersigned.  (See id.); (Rodriguez Action, Dkt. 81, Notice of Settlement and Stipulation to Transfer).  After the court in the Rodriguez Action denied the request to transfer, (see Rodriguez Action, Dkt. 82), the parties filed the operative Third Amended Complaint ("TAC"), which added Rodriguez as a named plaintiff, and allegations that FCA failed to cover Fuel Injectors as required by the California Emissions Warranty.  (See Dkt. 79, TAC at ¶¶ 1, 3-4, 8, 18, 24-30, 96-111).  The TAC asserts a UCL claim, and seeks restitution and injunctive relief.  (See id. at ¶¶ 155-76); (id. at ¶ 113 & Prayer for Relief).

The settlement class is defined as "[a]ll individuals who, as confirmed by FCA US's records, purchased a model-year 2015-2017 Chrysler 200 vehicle that was originally sold as a PZEV vehicle in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, Oregon,

1  Pennsylvania, Rhode Island, Vermont, or Washington ('Reg. 177 States') [("Class Vehicles")]."[1]

2  (Dkt. 98, Exh. A, Class Action Settlement Agreement ("Agreement") at § 2.7).

3       Pursuant to the settlement, FCA will "extend its existing warranty obligations applicable to

4  the Class Vehicles to cover the costs of all parts and labor to replace a failed MultiAir Actuator or

5  [F]uel [I]njector component for the earlier of fifteen years from the Class Vehicle's in-service date

6  or 150,000 miles driven." (Dkt. 98, Exh. A, Agreement at § 3.1). FCA will not impose any fees or

7  charges related to the warranty service. (Id. at § 3.2). All terms and conditions of the Basic

8  Limited Warranty will apply, (id. at § 3.1), and all applicable rights and conditions under preexisting

9  warranties will remain. (Id. at § 3.3). Class members will not be required to present any

10  settlement-related documents to receive warranty service at an authorized FCA USA dealership.

11  (Id. at § 3.2). Finally, the Warranty Extension follows the Class Vehicles. (Id. at § 3.1). In

12  addition, any class member "who previously paid for a repair relating to a failed MultiAir Actuator

13  or [F]uel [I]njector component entitled to warranty coverage under th[e] Settlement may submit a

14  claim to the Settlement Administrator for reimbursement upon proof of a paid repair." (Id. at §§

15  3.5, 4.1).

16       The Settlement Agreement provides for up to $980,000 in attorney's fees and costs, (see

17  Dkt. 98, Exh. A, Agreement at § 6.1), and incentive awards of $7,500 for each named plaintiff.

18  (See id. at § 6.3). FCA will be responsible for all "Administrative Expenses including Notice." (See

19  id. at § 3.17). The Settlement Administrator, Kroll Settlement Administration ("Kroll"), will be

20  responsible for disseminating Notice to class members. (See id. at §§ 2.23, 4.2).

21       In their Motion, plaintiffs seek an order: (1) preliminarily approving the proposed settlement;

22  (2) conditionally certifying the proposed settlement class; (3) appointing Thompson and Rodriguez

23  as class representatives; (4) appointing Pomerantz LLP and The Law Offices of Robert L. Starr

24  as class counsel; (5) approving dissemination of the proposed class notice and forms; and (6)

25  scheduling a final approval hearing. (See Dkt. 94, Motion at 1).

26       ————————————————

27      [1]  Reg. 177 States are states that have adopted California's Low-Emission Vehicle criteria pollutant and greenhouse gas emission regulations and Zero Emission Vehicle regulations under

28  Section 177 of the Clean Air Act, 42 U.S.C. § 7507. (See Dkt. 79, TAC at ¶¶ 142, 149).

1                 **LEGAL STANDARDS**

2 I.     CLASS CERTIFICATION.

3        At the preliminary approval stage, the court "may make either a preliminary determination

4 that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

5 as to the appropriateness of class certification."[2] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

6 *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

7 2011 WL 5443377, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

8 117 S.Ct. 2231, 2248 (1997) ("Parties seeking class certification for settlement purposes must

9 satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the settlement context, a

10 court must pay "undiluted, even heightened, attention" to the class certification requirements.

11 Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; accord In re Volkswagen "Clean Diesel" Mktg.,

12 Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018).  "Such attention is of vital

13 importance, for a court asked to certify a settlement class will lack the opportunity, present when

14 a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521

15 U.S. at 620, 117 S.Ct. at 2248.

16        A party seeking class certification must first demonstrate that:  "(1) the class is so numerous

17 that joinder of all members is impracticable; (2) there are questions of law or fact common to the

18 class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

19 of the class; and (4) the representative parties will fairly and adequately protect the interests of the

20 class." Fed. R. Civ. P. 23(a)(1)-(4).  Courts refer to these requirements by the following shorthand:

21 "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

22 Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean

23 Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc).

24 In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one

25 of the three requirements listed in Rule 23(b).[3] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338,

26 _____

27     [2]   All "Rule" references are to the Federal Rules of Civil Procedure.

28     [3]   Rule 23(b) is satisfied if:

345, 131 S.Ct. 2541, 2548 (2011).

       "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied. Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted); see Dukes, 564 U.S. at 345, 131 S.Ct. at 2548. A plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." Olean Wholesale, 31 F.4th at 665. However, Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be no trial." In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

       Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's

---

(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C. Penney Corp. ("Spann II"), 314 F.R.D. 312, 319 (C.D. Cal. 2016).  "[T]he showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval."  Id.; see also 4 Newberg on Class Actions § 13:10 (6th ed. 2022) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset.").  The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to show that the court will likely be able to:  (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for purposes of judgment on the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2).") (internal quotation marks omitted); Newberg, § 13:10 ("In 2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible

1  approval." Spann II, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v.

2  Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv.

3  Comm. Notes to Rule 23(e)(1) Amendments (The types of information that should be provided to

4  the court in deciding whether to send notice – i.e., that it will likely approve the settlement under

5  Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the

6  particular class action and proposed settlement."  "[G]eneral observations" as to the types of

7  information that should be provided include, but are not limited to, the following:  (1) "the extent

8  and type of benefits that the settlement will confer on the members of the class" and if "funds are

9  . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those

10  funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might

11  attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or

12  in parallel actions"; (4) "information about the existence of other pending or anticipated litigation

13  on behalf of class members involving claims that would be released under the proposal"; (5) "[t]he

14  proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must

15  be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent

16  to the determination whether the proposal is fair, reasonable, and adequate.").

17  **DISCUSSION**

18  I.  CLASS CERTIFICATION.

19      A.  Rule 23(a) Requirements.

20          1.  **Numerosity**.

21      A putative class may be certified only if it "is so numerous that joinder of all members is

22  impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

23  determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

24  A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks

25  omitted).  "As a general matter, courts have found that numerosity is satisfied when class size

26  exceeds 40 members[.]"  Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); accord

27  Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012).

28      Here, the class is so numerous that joinder is impracticable.  The settlement class includes

current and former owners of approximately 47,000 vehicles, (see Dkt. 94-1, Memo at 16), which easily exceeds the threshold for numerosity.

        **2.**   **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Proof of commonality under Rule 23(a) is "less rigorous" than the related predominance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by DZ Reserve v. Meta Platforms, Inc., 96 F.4th 1223, 1238 (9th Cir. 2024); Mazza, 666 F.3d at 589 (same). Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation. The main common question here is whether the MultiAir Actuators and Fuel Injector components should be covered under the California Emissions Warranty. (See Dkt. 94-1, Memo at 17); (Dkt. 94-2, Declaration of Jordan L. Lurie ("Lurie Decl.") at ¶ 24) (noting that root of action

1  is "FCA's alleged purported failure to identify and pay for MultiAir Actuators and Fuel Injection

2  components in Class Vehicles . . . under the California Emissions Warranty"); (Dkt. 79, TAC at ¶

3  151).  Under the circumstances, the court finds that plaintiffs have satisfied the commonality

4  requirement.

5            3.    **Typicality**.

6            "Typicality refers to the nature of the claim or defense of the class representative, and not

7  to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657

8  F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, the

9  class representative's claims must be "reasonably co-extensive with those of absent class

10  members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see

11  Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the

12  class.").  "The test of typicality is whether other members have the same or similar injury, whether

13  the action is based on conduct which is not unique to the named plaintiffs, and whether other class

14  members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal

15  quotation marks omitted).

16            Here, plaintiffs were subject to the same conduct that applies to all class members – FCA's

17  failure to identify and cover MutliAir Actuators and Fuel Injection components in the Class Vehicles

18  under the California Emissions Warranty.  (See Dkt. 94-1, Memo at 17-18); (Dkt. 79, TAC at ¶¶

19  23-24, 152(b)).  Thus, their claims arise from the same nucleus of facts as those of the class and

20  are based on the same legal theories, i.e., that defendant violated the UCL by failing to cover

21  MultiAir Actuators and Fuel Injection components under the California Emissions Warranty.  (See

22  Dkt. 79, TAC at ¶¶ 44, 48, 115, 155-76); see, e.g., Brown v. NFL Players Ass'n., 281 F.R.D. 437,

23  442 (C.D. Cal. 2012) (finding typicality requirement satisfied where the plaintiff's claims were

24  based on "the same event or practice or course of conduct that g[ave] rise to the claims of other

25  class members and . . . are based on the same legal theory") (internal quotation marks omitted);

26  Spann v. J.C. Penney Corp. ("Spann I"), 307 F.R.D. 508, 519 (C.D. Cal. 2015), modified, 314

27  F.R.D. 312 (C.D. Cal. 2016) ("[P]laintiff's claims are based on the same facts and the same legal

28  and remedial theories as the claims of the rest of the class members.").  Additionally, the court is

1  not aware of any facts that would subject plaintiffs "to unique defenses which threaten to become

2  the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)

3  (internal quotation marks omitted).  In short, plaintiffs have satisfied the typicality requirement.

4            4.    **Adequacy of Representation**.

5        "The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis,

6  657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

7  adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and

8  their counsel have any conflicts of interest with other class members and (2) will the named

9  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal

10 quotation marks omitted).  "Adequate representation depends on, among other factors, an

11 absence of antagonism between representatives and absentees, and a sharing of interest

12 between representatives and absentees." Id.

13       Here, the proposed class representatives have no individual claims separate from the class

14 claims, (see, generally, Dkt. 79, TAC), and do not appear to have any conflicts of interest with the

15 absent class members.  (See Dkt. 94-1, Memo at 18); (Dkt. 94-8, Declaration of Ebony Thompson

16 ("Thompson Decl.") at ¶ 7); (Dkt. 94-9, Declaration of Juvenal Rodriguez ("Rodriguez Decl.") at

17 ¶ 7); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here

18 is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class

19 Members' – particularly because the named Plaintiffs have no separate and individual claims apart

20 from the Class.").  Thus, "[t]he adequacy-of-representation requirement is met here because

21 Plaintiffs have the same interests as the absent Class Members[.]" Barbosa, 297 F.R.D. at 442.

22       Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

23 counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20.  Having reviewed the

24 declarations filed by proposed class counsel, (see Dkt. 94-2, Lurie Decl. at ¶¶ 17, 32-43); (Dkt. 94-

25 6, Firm Resume) (Dkt. 94-7, Declaration of Robert Starr ("Starr Decl.") at ¶¶ 3-6), the court is

26 persuaded that there are no issues as to the adequacy of representation. See Barbosa, 297

27 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds

28 that Plaintiffs are represented by experienced and competent counsel who have litigated

1 | numerous class action cases.").

2 |      B.    <u>Rule 23(b) Requirements</u>.

3 |      Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

4 | be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022 (internal

5 | quotation marks omitted). The rule requires two different inquiries, specifically a determination as

6 | to whether: (1) "questions of law or fact common to class members predominate over any

7 | questions affecting only individual members[;]" and (2) "a class action is superior to other available

8 | methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); <u>see</u>

9 | <u>Spann II</u>, 314 F.R.D. at 322-23 (same).

10 |      1.    **Predominance**.

11 |      "[T]he general rule [is] that predominance is easier to satisfy in the settlement context."

12 | <u>Jabbari v. Farmer</u>, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies

13 | the [predominance] requirement, a court pragmatically compares the quality and import of

14 | common questions to that of individual questions." <u>Id.</u> at 1005. "[T]he predominance analysis

15 | under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the

16 | case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

17 | representation." <u>Abdullah</u>, 731 F.3d at 964 (internal quotation marks omitted); <u>see also</u> <u>Amchem</u>,

18 | 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether

19 | proposed classes are sufficiently cohesive to warrant adjudication by representation."). "If a

20 | common question will drive the resolution [of the litigation], even if there are important questions

21 | affecting only individual members, then the class is sufficiently cohesive to warrant adjudication

22 | by representation." <u>Jabbari</u>, 965 F.3d at 1005 (internal quotation marks omitted); <u>see</u> <u>Abdullah</u>,

23 | 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class

24 | predominate, not that those questions will be answered, on the merits, in favor of the class.")

25 | (internal quotation marks omitted) (brackets in original). Finally, the class damages must be

26 | sufficiently traceable to plaintiffs' liability case. <u>See</u> <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 35,

27 | 133 S.Ct. 1426, 1433 (2013).

28 |      For the reasons discussed above, <u>see</u> <u>supra</u> at § I.A.2., the court is persuaded that

common questions predominate over individual questions.  See Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted).  Finally, the relief sought applies to all class members and is traceable to plaintiffs' liability case.  See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

          2.    **Superiority**.

    "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023 (internal citation omitted).  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

    The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions[.]"  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiffs do not assert any claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 79, TAC).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of recovery – would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011)

("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action."). In short, "there is no evidence that [c]lass members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]" Fed. R. Civ. P. 23(b)(3)(B). While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation." Newberg at § 4:70 (emphasis omitted). Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case. (See, generally, Dkt. 94-1, Memo at 19-20) (no disclosure of related litigation); see Barbosa, 297 F.R.D. at 444 ("The Court does not have any information that litigation concerning this controversy is currently being pursued by or against the class members; thus, this factor is neutral.").

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action." See Fed. R. Civ. P. 23(b)(3)(C)-(D). As noted above, "[i]n the context of settlement[,] . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment. Further, the filing of separate suits by thousands of class members, (see Dkt. 94-1, Memo at 16, 18-19), "would create an unnecessary burden on judicial resources." Barbosa, 297 F.R.D. at 445. Under the

1  circumstances, the court finds that the superiority requirement is satisfied.

2  II.    FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED

3         SETTLEMENT.

4         A.    The Settlement is the Product of Arm's-Length Negotiations.

5         Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

6  negotiated at arm's length.  Here, class counsel represents that the parties engaged in three full-

7  day mediation sessions, (see Dkt. 94-2, Lurie Decl. at ¶ 18), and that settlement is the product of

8  "non-collusive . . . arms' length negotiations" that was "finalized with the assistance of a seasoned

9  mediator."  (Id. at ¶ 31).  The record indicates that the parties "engaged in discovery, including

10 production and review of documents produced by FCA, and numerous written discovery

11 requests[,]" (id. at ¶ 17), and that plaintiffs "thoroughly investigated and researched the claims in

12 litigating this [a]ction . . . which allowed . . . [c]ounsel to better evaluate Plaintiffs' claims and

13 FCA's defenses to class certification and liability."  (Id. at ¶ 22).

14        Based on the record before the court, the court is persuaded that the parties thoroughly

15 investigated and considered their own and the opposing party's positions.  The parties had a

16 sound basis for measuring the terms of the settlement against the risks of continued litigation, and

17 there is no evidence that the settlement is the product of fraud or overreaching by, or collusion

18 between, the negotiating parties.  See, e.g., Spann II, 314 F.R.D. at 323-25 (finding no evidence

19 that a class action settlement was the product of fraud or collusion between the parties);

20 Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class

21 action settlement where there was "no evidence of fraud, overreaching, or collusion").

22        B.    The Amount Offered in Settlement Falls Within a Range of Possible Judicial

23              Approval and is a Fair and Reasonable Outcome for Class Members.

24              1.    **Recovery for Class Members.**

25        As noted above, FCA will "extend its existing warranty obligations applicable to the Class

26 Vehicles to cover the costs of all parts and labor to replace a failed MultiAir Actuator or [F]uel

27 [I]njector component for the earlier of fifteen years from the Class Vehicle's in-service date or

28 150,000 miles driven."  (Dkt. 98, Exh. A, Agreement at § 3.1).  FCA will also provide

"reimbursement" to any class member who previously paid to repair a failed MultiAir Actuator or Fuel Injector component entitled to warranty coverage under the settlement. (Id. at § 3.5). According to plaintiffs, the relief achieved as part of the settlement "directly targets the root of this class action" and "achieves an outcome that is identical to the best possible outcome that could be achieved at trial – Class Members who have paid to repair or replace MultiAir Actuators and Fuel Injector components will be reimbursed, and the Settlement also provides for complete future extended Emissions Warranty coverage" for these components. (See Dkt. 94-1, Memo at 22).

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial and appeal. See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule 23(e)(1) (noting the types of information that should be provided to the court deciding whether to grant preliminary approval includes, among other things: (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"). Given the significant risks of litigation coupled with the delays associated with continued litigation, the court is persuaded that the settlement benefits to the class fall within the range of reasonableness. See, e.g., In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

### 2. **Release of Claims**.

The court must also consider whether the settlement contains an overly broad release of liability. See Newberg at § 13:15 ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made

1 | basis[,]" without the establishment of a settlement fund or any other benefit to the class).

2 | Here, class members who do not exclude themselves from the settlement will release

3 | claims under the UCL,

> as well as any and all claims, causes of action, demands, debts, suits,
> liabilities, obligations, claims for monetary reimbursement, actions, rights of
> action, remedies of any kind and/or causes of action of every nature and
> description, whether known or unknown, asserted or unasserted, foreseen
> or unforseen, regardless of any legal theory, existing now or arising in the
> future, by Plaintiffs and any and all Class Members relating to the facts, acts,
> events, transactions, occurrences, courses of conduct, representations,
> omissions, circumstances, or other matters based on malfunction of the
> MultiAir Actuator and the [F]uel [I]njector in the Class Vehicles as alleged in
> the Action.  The Released Claims do not include claims for death, personal
> injuries, damage to tangible property other than a Class Vehicle, or
> subrogation.

(Dkt. 98, Exh. A, Agreement at § 2.19); (see id. at § 7.1).  Nor the settlement nor the applicable release is intended to be "construed as a waiver, release and/or compromise of any pending automobile lemon law claim."  (Id. at § 2.19).

With the understanding that, under the release, settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the release adequately balances fairness to absent class members and recovery for the class with defendant's business interest in ending this litigation.  See Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

/ / /

C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other."  The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165.  "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the Agreement provides for a service payment of $7,500 for each named plaintiff.  (Dkt. 98, Exh. A, Agreement at § 2.21.).  Although plaintiffs appear to have been diligent and taken on substantial responsibility in litigating the case, the court believes that a $7,500 service payment would be excessive.  Under the circumstances here, the court tentatively finds that an incentive payment of no more than $5,000 is appropriate. See, e.g., Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 reasonable).

D.   Class Notice and Notification Procedures.

Upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Fikes Wholesale, Inc. v.

1   HSBC Bank USA, N.A., 62 F.4th 704, 719 (2d Cir. 2023) (internal quotation marks omitted); Low

2   v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we

3   measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal

4   quotation marks omitted).  A class action settlement notice "is satisfactory if it generally describes

5   the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

6   and to come forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th

7   Cir. 2004) (internal quotation marks omitted); see also Gooch v. Life Invs. Ins. Co. of Am., 672

8   F.3d 402, 423 (6th Cir. 2012) (noting settlement notices "are sufficient if they inform the class

9   members of the nature of the pending action, the general terms of the settlement, that complete

10   and detailed information is available from the court files, [and] that any class member may appear

11   and be heard at the hearing[.]") (internal quotation marks omitted).  The notice should provide

12   sufficient information to allow class members to decide whether they should accept the benefits

13   of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement

14   but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001)

15   ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class

16   members of the terms of the proposed settlement and of their options.") (internal quotation marks

17   omitted).

18          Here, class members will receive direct notice via first-class mail, (see Dkt. 98, Exh. A,

19   Agreement at § 5.2); (id., Exh. A, Short-Form Notice), which will include information regarding the

20   settlement website where the Notice of Proposed Class Action Settlement ("Class Notice") may

21   be reviewed.  (See Dkt. 98, Exh. A, Agreement at § 5.2); (id., Exh. A, Short-From Notice); (id.,

22   Exh. B, Class Notice.  Class members will also receive notice via publication.[4]  (See Dkt. 103,

23   Joint Status Report).  The Class Notice describes the nature of the action and the claim asserted

24   in the operative complaint.  (See Dkt. 98, Exh. A, Agreement, Exh. B, Class Notice at 1-3); see

25   also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see Dkt. 98, Exh.

---

27          [4] Kroll will cause notice to be published on ClassAction.org and will also issue a press release

28   through PR Newswire's "Top Automotive Markets" distribution network.  (See Dkt. 103, Joint Status Report).

A, Agreement, Exh. B, Class Notice at 4); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement benefits and the release, as well as the proposed attorney's fees and expenses, and incentive payments.  (See Dkt. 98, Exh. A, Agreement, Exh. B, Class Notice at 4-5, 7, 10).  The Class Notice includes an explanation that lays out the class members' options under the settlement:  they may remain in the class, object to the settlement but still remain in the class (including by appearing through their own attorney), or exclude themselves from the settlement and pursue their claims separately against defendant.  (See id. at 1-2, 6-7); see also Fed. R. Civ. P. 23(c)(2)(B)(iv)-(vi).  Finally, the Class Notice explains the procedures for objecting to the settlement and provides information about the Final Approval Hearing.  (See Dkt. 98, Exh. A, Agreement, Exh. B, Class Notice at 7-9).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  In addition, the court finds that the procedure for providing notice and the content of the Class Notice constitute the best practicable notice to class members and comply with the requirements of due process.

    E.    Summary.

The court's preliminary evaluation of the settlement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litig. § 21.632 at 321 (4th ed. 2023); see also Spann II, 314 F.R.D. at 323 (same).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement **(Document No. 94)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the class, as defined in § 2.7. of the Settlement Agreement, (Dkt. 98, Exh. A, Agreement), for the purposes of settlement.

3.  The court preliminarily appoints plaintiffs Ebony Thompson and Juvenal Rodriguez as

class representatives for settlement purposes.

4. The court preliminarily appoints Pomerantz LLP and The Law Offices of Robert L. Starr as class counsel for settlement purposes.

5. The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6. The court approves the form, substance, and requirements of the Class Notice. (See Dkt. 98, Exh. A, Agreement, Exhs. A & B). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7. The court appoints Kroll as settlement administrator. Kroll shall complete dissemination of class notice, in accordance with the proposed notice plan, no later than **February 16, 2026**.

8. Plaintiffs shall file a motion for attorney's fees and costs, as well as any incentive payments, no later than **February 27, 2026**, and notice it for hearing for the date of the final approval hearing set forth below.

9. Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **April 2, 2026**, in accordance with the Class Notice and this Order.

10. Plaintiffs shall, no later than **May 4, 2026**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement. The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11. Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **May 11, 2026.**

12. Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **May 18, 2026**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13. A final approval (fairness) hearing is hereby set for **June 4, 2026**, at **10:00 a.m.** in

Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the named plaintiffs.

14. All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 2nd of December, 2025.


_____/s/_____
Fernando M. Olguin
United States District Judge